UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RAUL PADILLA-RUIZ, et al.,

        Plaintiffs,

v.                                  CIVIL ACTION NO. 2:16cv630

COMMUNICATION TECHNOLOGIES, INC.,

        Defendant.

## OPINION and FINAL ORDER

On May 31, 2018, Communication Technologies ("COMTek") filed a Motion for Summary Judgment ("Motion"). ECF No. 52. COMTek asserts that it is entitled to judgment as a matter of law on Plaintiffs' two remaining claims against COMTek, which are a claim pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), and a Puerto Rico tort law claim. See id.; ECF No. 53. The Motion was referred to a United States Magistrate Judge. ECF No. 73. The United States Magistrate Judge's Report and Recommendation ("R&R"), was filed on September 17, 2018. ECF No. 81.

The R&R recommends that COMTek's Motion should be denied as to Padilla-Ruiz's USERRA claim, but should be granted as to Plaintiffs' tort claim. R&R at 1, ECF No. 81.[1] COMTek objects to

---

[1] Padilla-Ruiz's spouse and the couple's "conjugal partnership" have joined as plaintiffs to the tort claim. However, Padilla-Ruiz is the only plaintiff who raises the USERRA claim against COMTek.

the recommendation that its Motion should be denied as to the USERRA claim, ECF No. 85, and Plaintiffs object to the recommendation that the Motion should be granted as to the tort claim, ECF No. 86. On November 2, 2018, this court held a hearing on the parties' Objections to the R&R. For the reasons below, COMTek's Objection is **GRANTED**, Plaintiffs' Objection is **OVERRULED**, and COMTek's Motion is **GRANTED**.

## I.

The following facts are taken from the record, and for the purposes of this Motion are construed in the light most favorable to the Plaintiffs.[2] COMTek employed Padilla-Ruiz from 2002 to 2008. Compl. ¶ 15, ECF No. 1. COMTek has a contract with the United States Army to staff Assistant Professors of Military Science for ROTC programs at colleges and universities throughout the country. Def.'s Ex. 3 at 2-4, ECF No. 53-1 at 27-29. The ROTC program, although offered through colleges and universities, is directed by

---

[2] COMTek objected to several exhibits that Plaintiffs submitted in opposition to COMTek's Motion. ECF No. 72. The Magistrate Judge considered these objections, and determined that several pieces of evidence Padilla-Ruiz submitted should not be considered. R&R at 21-25, ECF No. 81. Padilla-Ruiz did not object to the Magistrate Judge's conclusion that these pieces of evidence should not be considered. See ECF No. 86. Finding no clear error in the Magistrate Judge's conclusion, the court will not consider evidence submitted by Padilla-Ruiz that the Magistrate Judge determined should be excluded. See Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (internal citations omitted)).

the United States Army. Id. United States Army officers work at
the university as ROTC instructors, and supervise the COMTek
employees who serve as Assistant Professors of Military Science.
Id.

Padilla-Ruiz was employed by COMTek as an Assistant Professor
of Military Science. ECF No. 53 at 3. He was sent by COMTek to
teach in the ROTC program at the University of Puerto
Rico - Mayaguez, San German campus of InterAmerican University.
Id. At the university, he was supervised by the school's Professor
of Military Science, a United States Army officer. Id. Padilla-Ruiz
first worked under Lt. Col. Betancourt. Def.'s Ex. 4, ECF No. 53-1
at 73. Betancourt was promoted in early 2008, at which time
Padilla-Ruiz began working for Betancourt's replacement, Lt. Col.
Plaza. Def.'s Ex. 11, ECF No. 53-1 at 80. After Betancourt's
promotion, he became Plaza's supervisor in the ROTC program. Def.'s
Ex. 20, ECF No. 53-1 at 122. Padilla-Ruiz's COMTek supervisors,
first Larry Rose and later Rose's replacement John Cray, did not
work at the university with Padilla-Ruiz, but rather at branch
offices in the continental United States from which they supervised
COMTek employees working at many different universities. Def.'s
Ex. 1, ECF No. 53-1 at 1-2; Def.'s Ex. 3 at 5-6, ECF No. 53-1
at 30-31.

While Padilla-Ruiz worked in the ROTC program, he was also a
member of the United States Army Reserve. Pls.' Ex. 1, ECF No. 69-1

3

at 1. Padilla-Ruiz encountered some difficulty in scheduling his Army Reserve training on several occasions because of his teaching duties in the ROTC program. In 2006, Padilla-Ruiz received unexpected orders to attend Army Reserve training, but when he advised Betancourt that he would need to miss work at the ROTC program to attend this training, Betancourt responded by threatening to fire Padilla-Ruiz if he attended the Army Reserve training. Pls.' Ex. 8, ECF No. 69-1 at 35. Padilla-Ruiz asserts that he did not go to Army Reserve training because of this threat, and that he was therefore passed over for promotion in the Army Reserve. Pls.' Ex. 11, ECF No. 69-1 at 38.

In 2008, Padilla-Ruiz was again scheduled for Army Reserve training that would conflict with his ROTC program work assignments, particularly his attendance at a conference that the ROTC program held in the summer, the "LDAC" conference. Def.'s Ex. 11, ECF No. 53-1 at 81. His ROTC supervisor, now Plaza rather than Betancourt, told him that "he was going to have to change" his Army Reserve training schedule so that it did not conflict with his ROTC work schedule. Id. On another occasion, Plaza told Padilla-Ruiz that he could schedule his Army Reserve training "with the understanding that [Army Reserve training] could not interfere with his LDAC dates." Pls.' Ex. 26, ECF No. 69-1 at 74.

In May 2008, Padilla-Ruiz wrote an email to his COMTek supervisor, Larry Rose, in which he discussed Plaza and

4

Betancourt's attitude toward Padilla-Ruiz's Army Reserve training, including the 2006 incident in which Betancourt threatened to fire Padilla-Ruiz if he attended Army Reserve training. Pls.' Ex. 11, ECF No. 69-1 at 38. Id. However, shortly thereafter Rose was replaced as Padilla-Ruiz's COMTek supervisor by John Cray. Def.'s Ex. 1, ECF No. 53-1 at 1-2. Padilla-Ruiz and Cray communicated only a few times after Cray became Padilla-Ruiz's COMTek supervisor. Def.'s Ex. 1, ECF No. 53-1 at 2-3, 7. From these communications, Cray concluded that Padilla-Ruiz felt that his ROTC supervisor Plaza should be more supportive of ROTC instructors who were also members of the Army Reserve. Def.'s Ex. 1, ECF No. 53-1 at 2-3. However, Cray did not know about any COMTek employees suffering negative consequences in the Army Reserve because of the difficulty they had scheduling Army Reserve training around their ROTC teaching duties. Pls.' Ex. 25, ECF No. 69-1 at 70. Unlike Rose, Cray did not know about the 2006 incident, in which Padilla-Ruiz was passed over for promotion in the Army Reserve because Betancourt threatened to fire him if he attended the training. See id.; see also Pls.' Ex. 1, ECF No. 69-1 at 8.

On July 1, 2008, only about six weeks after Cray became Padilla-Ruiz's COMTek supervisor, Padilla-Ruiz's ROTC supervisor Plaza initiated an investigation of Padilla-Ruiz, alleging that Padilla-Ruiz had committed two acts of misconduct. Def.'s Ex. 17, ECF No. 53-1 at 113. First, Plaza alleged that Padilla-Ruiz lied

in order to switch ROTC work schedules with Capt. Moore, a fellow ROTC instructor. Id. Specifically, Padilla-Ruiz wanted to switch dates of attendance with Capt. Moore for the ROTC program's LDAC conference. Id. On April 24, 2008, Padilla-Ruiz sent an email to Capt. Moore and Plaza about the proposed switch of schedules, and Padilla-Ruiz wrote "[t]his change is requested in order for me to attend ILE phase III." Def.'s Ex. 18, ECF No. 53-1 at 116. "ILE phase III" was Army Reserve training Padilla-Ruiz intended to complete during the summer of 2008. ECF No. 69 at 5. At the time Padilla-Ruiz sent this email, however, he had not yet been scheduled for ILE phase III training. See Def.'s Ex. 8, ECF No. 53-1 at 77. Rather than Army Reserve training, Padilla-Ruiz conflict with his LDAC conference schedule was that it conflicted with the date of his daughter's birthday, June 14, 2008. Def.'s Ex. 2, ECF No. 53-1 at 22. Several weeks later, Padilla-Ruiz sent Plaza another email about the scheduling of ILE phase III training, at which time Plaza concluded that Padilla-Ruiz had been lying to Capt. Moore in order to convince him to switch work schedules. Def.'s Ex. 11, ECF No. 53-1 at 83.

Plaza's second allegation was that Padilla-Ruiz reported on his time card that he had worked on June 9, 2008, when he had actually been absent from work. Def.'s Ex. 17, ECF No. 53-1 at 113. On June 9, 2008, Plaza attempted to contact Padilla-Ruiz at the university, but was told by Sergeant Hernandez, one of

6

Padilla-Ruiz's coworkers, that Padilla-Ruiz had called in and said that he would not be at work that day. Def.'s Ex. 11, ECF No. 53-1 at 83-84. Plaza later reviewed Padilla-Ruiz's timecard and found that Padilla-Ruiz reported he had worked eight (8) hours on June 9. Id.

Plaza appointed one of the ROTC instructors at the university, Maj. Jose Torres, to investigate these two allegations of Padilla-Ruiz's misconduct. Def.'s Ex. 17, ECF No. 53-1 at 113. Torres reviewed the email Padilla-Ruiz sent to Capt. Moore, as well as another email from Padilla-Ruiz which revealed that Padilla-Ruiz's ILE phase III training was not scheduled at the time Padilla-Ruiz wrote to Capt. Moore. Def.'s Ex. 18, ECF No. 53-1 at 114-117. He also interviewed the witness Hernandez about Padilla-Ruiz's absence on June 9. Id. at 114. He filed a report in which he concluded that both allegations of misconduct Plaza made against Padilla-Ruiz were "substantiated." Id. at 115.

Plaza forwarded the results of Torres' investigation to Padilla-Ruiz's COMTek supervisor Cray and recommended that COMTek terminate Padilla-Ruiz because of these two acts of misconduct. Def.'s Ex. 20, ECF No. 53-1 at 122. In his recommendation, Plaza wrote that there was no room in the ROTC program for Padilla-Ruiz's "lack of honor and integrity." Def.'s Ex. 19, ECF No. 53-1 at 121. Betancourt, Plaza's supervisor, then reviewed the investigation results and also recommended that Padilla-Ruiz be terminated based

on the same two instances of misconduct, and his recommendation was forwarded to Cray. Def.'s Ex. 20, ECF No. 53-1 at 122. No mention was made of any earlier difficulties or hostility regarding Padilla-Ruiz's Army Reserve schedule. See id.

Upon receipt of these recommendations, Cray spoke with the witness Hernandez, and reviewed the emails about Padilla-Ruiz's schedule switching and ILE phase III training schedule. Def.'s Ex. 1, ECF No. 53-1 at 5. Cray concluded that Padilla-Ruiz had "lost the confidence of the customer." Id. He therefore recommended that Padilla-Ruiz be terminated "per the request of the Army." Id. COMTek terminated Padilla-Ruiz on August 15, 2008. Def.'s Ex. 21, ECF No. 53-1 at 124.

## II.

Plaintiffs first filed suit against COMTek on July 22, 2009, in the United States District Court for the District of Puerto Rico. Padilla-Ruiz v. Comtek Commc'ns. Techs., 2010 WL 1728311, Civil No. 09-1695 (SEC) (D.P.R. Apr. 26, 2010). Plaintiffs' suit was dismissed without prejudice for improper venue to allow Plaintiffs to re-file their suit in the appropriate venue, Virginia. Id. Plaintiffs then refiled their suit against COMTek, again in the United States District Court for the District of Puerto Rico on April 25, 2011. Padilla-Ruiz v. United States, 893 F. Supp. 2d 301, 304 (D.P.R. 2012). On October 28, 2015, after finding that the venue issue was already fully litigated in the

first suit between the parties, Padilla-Ruiz's suit against COMTek was again dismissed without prejudice to allow Padilla-Ruiz to refile the suit in the appropriate venue, Virginia. <u>Padilla-Ruiz v. United States</u>, Civil No. 11-1393 (FAB) (D.P.R. Oct. 28, 2015) (unpublished); ECF No. 28-6 at 2.

Plaintiffs filed the instant suit against COMTek in the United States District Court for the Eastern District of Virginia on October 26, 2016. ECF No. 1. On May 12, 2017, COMTek filed a Motion to Dismiss and Memorandum in Support, arguing that Plaintiffs' claims were time-barred. ECF Nos. 22, 23. On February 15, 2018, this court denied COMTek's Motion to Dismiss as to Padilla-Ruiz's USERRA claim and as to Plaintiffs' tort claim. ECF No. 47. However, the court refrained from addressing at the Motion to Dismiss stage whether Plaintiffs' tort claim was time-barred under a "bad faith" exception to the applicable statute of limitations. <u>Id.</u> at 11. On May 31, 2018, COMTek filed the instant Motion, arguing that Plaintiffs' tort claim is time-barred under the "bad faith" exception, and that COMTek is entitled to judgment as a matter of law on Padilla-Ruiz's USERRA claim. ECF Nos. 52, 53. On August 7, 2018, Padilla-Ruiz filed a Memorandum in Opposition. ECF No. 69. On August 13, 2018, COMTek filed a Reply. ECF No. 72. All discovery for the case concluded on August 21, 2018. ECF No. 51.

On August 14, 2018, this court referred the Motion to United States Magistrate Judge Robert J. Krask, pursuant to the provisions

of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), to conduct hearings, including evidentiary hearings, if necessary, and to submit to the undersigned district judge proposed findings of fact, if applicable, and recommendations for disposition of the Motion. ECF No. 73. The Magistrate Judge filed the R&R on COMTek's Motion on September 17, 2018. ECF No. 81. The parties were advised of their right to file written objections to the findings and recommendations made by the Magistrate Judge. R&R at 37-38, ECF No. 81. On September 28, 2018, both sides filed Objections to the R&R. ECF Nos. 85, 86. On October 12, 2018, both sides filed Responses to the opposing party's Objections. ECF Nos. 87, 88. On November 2, 2018, this court held a hearing on the parties' Objections to the R&R, where argument was heard from counsel for the parties. The matter is ripe for decision.

### III.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the court, having reviewed the record in its entirety, shall make a de novo determination of those portions of the R&R to which the Defendants have specifically objected. Fed. R. Civ. P. 72(b). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate when the court, viewing the record as a whole

and in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). A court should grant summary judgment if the nonmoving party, after adequate time for discovery, has failed to establish the existence of an essential element of that party's case, on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## IV.

The R&R concludes that Padilla-Ruiz's USERRA claim should not be dismissed because a reasonable jury could conclude that Plaza and Betancourt were motivated by a discriminatory animus against Padilla-Ruiz's Army Reserve membership when they recommended his termination because of the evidence in the record that both Plaza and Betancourt had previously expressed frustration with Padilla-Ruiz's Army Reserve training schedule. See R&R at 28-31, ECF No. 81. In its Objection, COMTek argues that it does not matter why Plaza and Betancourt recommended Padilla-Ruiz's termination, because it cannot be held vicariously liable for Betancourt and Plaza's actions, since they were not acting as COMTek's agents at the time they recommended Padilla-Ruiz's dismissal. Def.'s Obj. at 2-3, 5-6, ECF No. 85.

The R&R also concludes that Plaintiffs' tort claim should be dismissed as time-barred because of Plaintiffs' "dilatory pursuit"

11

of their claim against COMTek. R&R at 37, ECF No. 81. In their Objection, Plaintiffs first argue that this issue was already litigated and ruled on by this court at the Motion to Dismiss stage. Pls.' Obj. at 1, ECF No. 69. Plaintiffs also argue that the Magistrate Judge erred in concluding that the "bad faith" exception to the statue of limitations applies to their suit. Id. at 2.

## A. USERRA Claim

In relevant part, USERRA states that "[a] person who is a member of . . . a uniformed service shall not be denied . . . retention in employment . . . by an employer on the basis of that membership [in a uniformed service] . . . ." 38 U.S.C. § 4311(a). To present a prima facie case under USERRA, a plaintiff must show that (1) he is a member of a uniformed service, (2) he was denied retention in employment by an employer, and (3) such denial was on the basis of the plaintiff's membership in a uniformed service. Id.

The parties have stipulated that Padilla-Ruiz is a member of the United States Army Reserve, a uniformed service. ECF No. 53 at 2-3; ECF No. 69 at 2. They have also stipulated that Padilla-Ruiz was denied retention in employment by his employer, COMTek, which terminated Padilla-Ruiz on August 15, 2008. Def.'s Ex. 21, ECF No. 53-1 at 124. The central issue in COMTek's Motion is whether Padilla-Ruiz has made a prima facie case that COMTek terminated Padilla-Ruiz because of his membership in the Army

Reserve. United States Supreme Court precedent establishes that COMTek is liable under USERRA for a supervisor's recommendation if (1) the supervisor was acting as COMTek's agent, (2) the supervisor was motivated by an "antimilitary animus," and (3) the supervisor's recommendation proximately caused Padilla-Ruiz's termination. Staub v. Proctor Hosp., 562 U.S. 411, 421-22 (2011). The problem here is that Padilla-Ruiz has failed to make a showing that Cray, his supervisor at COMTek, was motivated by any "antimilitary animus."

Padilla-Ruiz generally alleges that his supervisors were motivated by a discriminatory animus against the Army Reserve when they recommended his termination. Compl. ¶ 30-34, ECF No. 1; Mem. Opp'n at 15, ECF No. 69. Three people had supervisory control over Padilla-Ruiz: Plaza and Betancourt at the university ROTC program, and Cray, Padilla-Ruiz's COMTek supervisor. See id. The R&R's conclusion that Padilla-Ruiz may have been terminated based on "antimilitary animus" focuses on the actions of Plaza and Betancourt, not Cray. R&R at 28-31, ECF No. 81. The R&R assumes, without addressing, that Plaza and Betancourt were acting as agents of COMTek. Id. at 28. However, under the undisputed facts, Cray based his recommendation of termination on Plaza and Betancourt's recommendation, but there is no showing that Plaza and Betancourt were agents of COMTek, or that Cray knew of any previous "antimilitary animus." The record shows that Plaza and Betancourt

13

were agents of the United States Army, not COMTek, and that Cray was the agent of COMTek.

Importantly, Padilla-Ruiz has not submitted any evidence from which a reasonable jury could conclude that Cray recommended Padilla-Ruiz's termination for discriminatory reasons, only that he relied upon Plaza and Betancourt, whose stated reasons were that Padilla-Ruiz lied to a coworker in order to switch work schedules and submitted a fraudulent timecard, not any discriminatory reasons involving "antimilitary animus." Padilla-Ruiz has not shown that Plaza and Betancourt's alleged history of frustration toward his Army Reserve schedule was ever communicated to Cray; in fact, the evidence is to the contrary. See Pls.' Ex. 25, ECF No. 69-1 at 70 (Cray's deposition, in which he denied knowledge of the 2006 incident between Padilla-Ruiz and Betancourt that allegedly resulted in Padilla-Ruiz being passed over for Army Reserve promotion). Therefore, Padilla-Ruiz has not sufficiently shown that COMTek terminated him because of his membership in the Army Reserve.

## 1. Vicarious Liability

While the Supreme Court has held that vicarious liability is appropriate in USERRA cases "since [the] supervisor is an agent of the employer," the Court's reasoning was based on principles of agency law, and especially the principle of vicarious liability within a principal-agent relationship. Staub, 562 U.S. at 421-22.

14

In _Staub_, Vincent Staub worked as an angiography technician at Proctor Hospital. _Id._ at 413. While Staub was employed at Proctor Hospital, he was also a member of the Army Reserve, which required him to attend training one weekend per month and fulfill various other Army Reserve commitments. _Id._ Staub's immediate supervisors at Proctor Hospital, Janice Mulally and Micahel Korenchuk, were "hostile" to Staub's Army Reserve obligations. _Id._ at 414. Mulally and Korenchuck felt that Army Reserve training was not a legitimate reason for missing work, and that Staub's absences for Army Reserve training were putting a strain on his department at the hospital. _Id._ Mulally advised a coworker that she wanted to "get rid" of Staub, and Korenchuk was aware that Mulally was "out to get" Staub. _Id._ Following a series of work-related incidents and a reprimand against Staub involving Mulally and Korenchuk, Proctor Hospital's Vice President of Human Resources, Linda Buck, decided to terminate Staub. _See id._ at 414-15. Buck's stated reason for the termination was that Staub had defied Mulally's written reprimand and left his work area without his supervisor's permission. _Id._ at 415. Staub sued Proctor Hospital for USERRA violations. _Id._ He did not allege that Linda Buck, the person who terminated him, had any discriminatory motivation against the Army Reserve. _Id._ Instead, Staub alleged that Mulally and Korenchuk had such discriminatory motive when they made the written reprimand and the report to Linda Buck about Staub's work-related behavior,

and that these actions proximately caused Staub to be terminated. Id.

The Court held that Proctor Hospital could be liable under USERRA for the discriminatory motives of Mulally and Korenchuk. Id. at 419-20. Although neither Mulally or Korenchuk terminated Staub, and although Buck did not have any discriminatory intent when she terminated Staub, "[t]he employer is at fault because one of its agents committed an action based on discriminatory animus that was intended to cause, and did in facts cause, an adverse employment decision." Id. at 421. The Court expressly limited this form of liability to circumstances when the discriminatory supervisor acted as an agent of the employer, "under traditional agency principles." Id. at 422, n. 4.

COMTek argues the discrimination and "antimilitary animus" were on the part of Plaza and Betancourt, who were agents of the Army and not of COMTek.[3] Def.'s Obj. at 3-4, ECF No. 85. COMTek asserts that, the Army officers, Plaza and Betancourt, had sole authority to supervise Padilla-Ruiz at the university in the ROTC

---

[3] Padilla-Ruiz previously brought a USERRA claim against the United States, seeking to hold the Army liable for the allegedly discriminatory actions of Plaza and Betancourt. Padilla-Ruiz v. United States, No. 12-2368, 593 F. App'x 1, 5 (1st Cir. Jan. 30, 2015) (unpublished). The First Circuit Court of Appeals held that said claim must be dismissed because the Merit Systems Protection Board, not the court, had exclusive jurisdiction over USERRA claims against the United States. Id. In sum, Padilla-Ruiz had not brought his claim against the Army in the proper forum. See id.

program, as well as to investigate any alleged misconduct there, and that COMTek did not have the authority to control Plaza or Betancourt. Id. at 5. Therefore, COMTek cannot be held vicariously liable for Plaza and Betancourt's actions under traditional principles of agency law.[4] See id.; see also Staub, 562 U.S. 422, n. 4.

In support, COMTek submitted its "Supplemental Employee Guide," a COMTek policy manual. Def.'s Ex. 3, ECF No. 53-1. Per the policies outlined in the Supplemental Employee Guide, the Army officer who supervises a COMTek employee teaching in the ROTC program establishes the duty hours and work assignments for the COMTek employee. Def.'s Ex. 3 at 9-10, ECF No. 53-1 at 34-35. COMTek also gives to the supervising Army officer the sole authority to investigate employee misconduct while teaching in the ROTC program, although COMTek retains the authority to discipline its own employees. Def.'s Ex. 3 at 18, ECF No. 53-1 at 43. COMTek

---

[4] It is a well-settled principle of employment law that an employer may be held vicariously liable for the actions of another individual, but only if the employer and the individual are engaged in a principal-agent relationship. Meyer v. Holley, 537 U.S. 280, 285 (2003). The type of control the principal has over an individual is determinative of whether a principal-agent relationship exists. For agency to exist, the principal must have "the right to control the methods or details of doing the work, not control of the results." Wynn's Extended Care, Inc. v. Bradley, 619 F. App'x 216, 218, (4th Cir. 2015) (per curiam) (quoting Murphy v. Holiday Inns, Inc., 219 S.E. 2d 874, 875-76 (Va. 1975)). Under the undisputed facts here, COMTek did not have any control over Plaza and Betancourt in the exercise of their duties as Army officers in the ROTC program. See infra text at 17-19 and note 5.

argues that, under this policy arrangement, COMTek did not have the authority to supervise Plaza and Betancourt, but instead Plaza and Betancourt had sole authority to direct COMTek employees as needed for the Army and the ROTC program. Def.'s Obj. at 5, ECF No. 85.[5]

Padilla-Ruiz has not submitted any evidence to create a factual dispute that COMTek possessed sufficient control over Plaza and Betancourt in the execution of their duties in the ROTC program such that a principal-agent relationship existed. First, Padilla-Ruiz has not submitted evidence to rebut the policies in COMTek's Supplemental Employee Guide, which delegate complete authority to Army officers to supervise COMTek employees according to the needs of the Army and the ROTC program. See Pls.' Exs., ECF No. 69-1. Further, based on unrebutted evidence, COMTek did not in any way control Plaza's investigation of Padilla-Ruiz, or the conclusion by Plaza and Betancourt that Padilla-Ruiz should be terminated. Plaza initiated the Padilla-Ruiz investigation on his own, independently appointed Torres as a Special Investigator, and recommended to COMTek that Padilla-Ruiz should be fired without

---

[5] Outside of the context of the employer-employee agency relationship here, i.e., the Army and its officers and COMTek and its employees, the only agency relationship that may have existed was the Army contractor as the principal/client, and COMTek as its agent/supplier of ROTC instructors, but not the Army as the agent of COMTek. See supra note 4.

ever taking instruction from COMTek. Def.'s Exs. 17-20, ECF No. 53-1 at 113-22.

Based on these undisputed facts, COMTek did not have the authority to give even interim instructions to Plaza or Betancourt about how to supervise Padilla-Ruiz or to investigate his alleged misconduct while teaching in the ROTC program. Because COMTek did not have sufficient control over Plaza or Betancourt to create a principal-agent relationship, COMTek cannot be held vicariously liable for any discriminatory animus that may or may not have motivated the recommendations of Plaza and Betancourt. See Staub, 562 U.S. at 421-22.

## 2. Direct Liability

Further, Padilla-Ruiz has also failed to present a triable issue of fact that Cray recommended Padilla-Ruiz's termination for discriminatory reasons. The Supreme Court has held that an employer should be liable under USERRA, if its agent recommends an employee's termination while "motivated by antimilitary animus." Id. at 422. The text of USERRA states that an employee must show that his armed services membership was a "motivating factor" in the employer's decision to terminate him. 38 U.S.C. § 4311(c)(1). Thus, for Padilla-Ruiz to prevail, he must show that his armed services membership was a "motivating factor" in Cray's recommendation that he be terminated. See Staub, 562 U.S. at 422.

Padilla-Ruiz has not met this evidentiary burden. He advances two theories in support of his contention that Cray was motivated by an antimilitary animus. First, Padilla-Ruiz submitted emails between himself and Cray's predecessor at COMTek, Larry Rose, in which Padilla-Ruiz discussed Plaza and Betancourt's attitude toward Padilla-Ruiz's Army Reserve training, including the 2006 incident in which Betancourt threatened to fire Padilla-Ruiz if he attended Army Reserve training, causing Padilla-Ruiz to be passed over for promotion in the Army Reserve. Pls.' Ex. 11, ECF No. 69-1 at 38. Padilla-Ruiz asserts that Cray must have seen these emails, and that the emails may have influenced Cray's decision to recommend Padilla-Ruiz's termination. Mem. Opp'n at 12, ECF No. 69. Padilla-Ruiz offers no evidence in support of these assertions. The fact that Padilla-Ruiz sent communications to Larry Rose about his Army Reserve scheduling incidents with Plaza and Betancourt is not alone sufficient to prove that Cray knew about those communications, and is not alone sufficient to prove that Cray developed a bias against Padilla-Ruiz based on those communications. In fact, at his deposition, Cray was asked if he was aware that Army Reservists like Padilla-Ruiz were passed over for promotion in the Army Reserve because of because of the difficulty they had scheduling Army Reserve training around their ROTC teaching duties, and he denied knowledge of this. Pls.' Ex. 1, ECF No. 69-1 at 8; Pls.' Ex. 25, ECF No. 69-1 at 70.

Second, Padilla-Ruiz submitted a portion of Cray's deposition, in which Cray stated that approximately twenty-five (25) of the one hundred eighty (180) COMTek employees he supervised were members of the Army Reserve who were mobilized or deployed at or around the time of Padilla-Ruiz's termination. Pls.' Ex. 25, ECF No. 69-1 at 72-73. Padilla-Ruiz theorizes, without any evidentiary support, that there were too many Army Reservists being called to active duty, and that this was causing staffing problems for COMTek. Mem. Opp'n at 12, ECF No. 69. Padilla-Ruiz did not submit evidence in support of this theory that COMTek was having staffing problems because of the Army Reserve.

The fact that twenty-five (25) COMTek employees were members of the Army Reserve who were mobilized or deployed at the time of Padilla-Ruiz's termination is not sufficient to rationally support a conclusion that COMTek was having staffing problems because of the Army Reserve,[6] and that Cray therefore recommended that Padilla-Ruiz be terminated so that COMTek could hire a non-Reservist to replace him. Both theories advanced by Padilla-Ruiz require inferences unsupported by any evidence, but instead supported only by a mere conclusory allegation, to create their argument that Cray acted based on an antimilitary bias against Padilla-Ruiz.

---

[6] This fact could easily have been established, if true, at Cray's deposition. See Pls.' Ex. 25, ECF Nos. 71-73.

Finally, undisputed facts in the case show that Cray recommended Padilla-Ruiz's termination for nondiscriminatory reasons. Padilla-Ruiz alleges that he barely ever communicated with Cray prior to his termination. Pls.' Ex. 1, ECF No. 69-1 at 7. In fact, Cray began supervising Padilla-Ruiz in May 2008, only about six weeks before Plaza started investigating Padilla-Ruiz. Pls.' Ex. 23, ECF No. 69-1 at 63. Moreover, Cray did not order or recommend Plaza's investigation of Padilla-Ruiz. Pls.' Ex. 25, ECF No. 69-1 at 67. In his affidavit, Cray states that he reviewed the results of Plaza's investigation, conducted an independent investigation of Padilla-Ruiz's alleged misfeasance by reviewing the emails regarding's Padilla-Ruiz's schedule switch with Capt. Moore, and by interviewing the witness Hernandez about Padilla-Ruiz absence from work, and concluded that Padilla-Ruiz "lost the confidence of the customer." Def.'s Ex. 1, ECF No. 53-1 at 5. He therefore recommended that Padilla-Ruiz be terminated "per the request of the Army." Id.

### 3. Conclusion

Padilla-Ruiz has not made a prima facie case that Cray's recommendation was premised on any antimilitary animus, but rather on the asserted misconduct reasons of Plaza and Betancourt. Accordingly, COMTek cannot be liable under USERRA based on Cray's recommendation. Moreover, Padilla-Ruiz has not shown that COMTek can be vicariously liable under USERRA based on the recommendation

of Plaza and Betancourt. COMTek is entitled to summary judgment on Padilla-Ruiz's USERRA claim.

## B. Puerto Rico Tort Claim

Under Puerto Rico's tolling rules, the statute of limitations is typically tolled during the pendency of a civil action, and the statute of limitations restarts in the event of a voluntary or non-prejudicial dismissal of a civil action. Rodriguez v. Suzuki Motor Corp., 570 F.3d 402, 407 (1st Cir. 2009). However, the First Circuit has recognized an exception "for cases where the [tolling] rule is abused or used in bad faith." Lopez-Gonzalez v. Comerio, 404 F.3d 548, 554 (1st Cir. 2005). The restart tolling rule does not prevent defendants from ever receiving the benefit of the statute of limitations, "which is designed to protect defendants against the prosecution of stale claims . . . ." Id. at 555. In Lopez-Gonzalez, the First Circuit refused to apply the restart tolling rule because plaintiffs had disobeyed court orders without explanation, and had waited nearly one year after dismissal to file the very same complaint that had already been determined to be inadequate. Id.

The R&R correctly concluded that Plaintiffs' Puerto Rico tort claim should be dismissed as time-barred. First, Plaintiffs' argument that this court already ruled on this issue at the Motion to Dismiss stage is without merit. This court's order on COMTek's Motion to Dismiss left open the question whether Plaintiffs' tort

claim was time-barred under a "bad faith" exception to the Puerto Rican statute of limitations. ECF No. 47 at 11.

Further, the uncontested facts of this case clearly support the conclusion that Plaintiffs' delay in bringing their claim amounted to bad faith. Plaintiffs' suit was first dismissed for improper venue by the United States District Court for the District of Puerto Rico on April 26, 2010. Padilla-Ruiz, 2010 WL 1728311. In dismissing the suit, the court specifically ruled that Plaintiffs' suit needed to be filed in a federal court in Virginia. Id. Rather than refile their suit against COMTek in a federal court in Virginia, Plaintiffs waited almost an entire year and then inexplicably refiled their suit against COMTek in the United States District Court for the District of Puerto Rico, even though that court had already been ruled an improper venue. Padilla-Ruiz v. United States, Civil No. 11-1393 (FAB) (D.P.R. Oct. 28, 2015) (unpublished); ECF No. 28-6 at 2. Plaintiffs did not file suit against COMTek in the United States District Court for the Eastern District of Virginia until October 26, 2016, over six (6) years later. ECF No. 1.

As in Lopez-Gonzalez, where the restart tolling rule was not applied because plaintiffs had disobeyed court orders without explanation, and waited a year before refiling a complaint they already knew to be inadequate, the restart tolling rule should not be applied in this case because Plaintiffs refused to abide by the

24

Puerto Rico court's 2010 order that Puerto Rico was an improper venue, and waited almost an entire year before refiling a complaint in the Puerto Rico court they already knew to be inadequate. See Lopez-Gonzalez, 404 F.3d at 555. Moreover, by a combination of refiling their suit in Puerto Rico after that venue had been ruled improper, and waiting almost an entire year to refile each time their suit was dismissed, Plaintiffs needlessly extended their suit against COMTek for over six years. Application of the restart tolling rule in this case would subject COMTek to "the prosecution of stale claims," and the risk that COMTek will be unable to defend against Plaintiffs' claims because witnesses have become unavailable, or evidence has been lost, in the ten (10) years since Plaintiffs' alleged injuries occurred. See id. Based on these facts, the bad faith exception applies to the statute of limitations here, even more so than in Lopez-Gonzalez, and Plaintiffs' tort claim is time-barred.

## V.

The court, having examined the Objections to the R&R filed by the parties, and having made de novo findings with respect thereto, hereby **GRANTS** COMTek's Objection, and **OVERRULES** Plaintiffs' Objection. Accordingly, COMTek's Motion for Summary Judgment, ECF No. 52, is **GRANTED**. Plaintiffs' suit is **DISMISSED WITH PREJUDICE** as to all counts. The Clerk shall enter judgment in favor of COMTek in accordance with this Opinion and Final Order.

The Clerk is **DIRECTED** to send a copy of this Opinion and Final

Order to counsel of record for the parties.

**IT IS SO ORDERED.**

_Rebecca Beach Smith_
REBECCA BEACH SMITH
DISTRICT JUDGE

January 9 , 2019